Good morning, Your Honors. May it please the Court, I'm Katie Kovacs on behalf of Secretary Kempthorne. I hope, if I can, to reserve five minutes of my time for rebuttal. The District Court in this case enjoined the implementation of an Act of Congress holding that it would violate the Court's prior injunction prohibiting the display of a cross on Sunrise Rock in the Mojave Preserve. That order was both premature and incorrect. It was premature because the Court should have given the Park Service a chance to implement this law consistent with its prior injunction, and it should have waited to rule on the constitutionality of Section 8121 until it had a complete set of facts to judge. And it was incorrect for three reasons. One, because a sale of real property is generally an effective means of ending an Establishment Clause violation. Two, because it serves a legitimate secular purpose of preserving a war memorial. And three, because it represents Congress's good-faith effort to navigate that narrow path between the competing demands of the First Amendment. Let's talk about your rightness claim. What do we know now? We know now that the Federal Government wanted in one way or another to allow the preservation of the cross. Is that accurate? I think that's an accurate representation, yes. So if, in fact, that violates the Establishment Clause, that's what we should be deciding now. What more would we need to know? Well, in general, Establishment Clause cases are very fact-specific. We simply don't have the facts on the ground today. What facts don't we have? Well, for example, Your Honor, we don't know what kind of a sign the Park Service might erect at the site. The district court dismissed the potential impact of a sign in a footnote, simply saying it's hard to tell how the Park Service might put up a sign or a fence that would inform approaching motorists that this is private property. Well, how about a big sign that says private property? We simply don't have those facts on the ground. And in general, courts wait and don't decide constitutional questions in advance of their necessity. I submit that's exactly what the district court did here. But what if the issue is there's a cross there which the Federal Government has, by one way or another, implemented? Does it matter that now it's in private hands if, in fact, what the government's purpose was to violate the Establishment Clause? I think you're getting to part of what the district court did hold here was that the Congress had an illegitimate purpose. And so I think it's appropriate to turn to that part of the analysis at this point, which really goes to the merits. It's pretty unusual for a court to strike down a legislative act based on illegitimate purpose. It is. And as the Supreme Court, Justice Souter, writing for the court in the McCreary case, emphasized that when analyzing the purpose of any legislative enactment, the court looks to the openly available data, the readily discoverable fact, and should only invalidate the enactment when that readily discoverable fact, that is, the face of the document, the legislative history, when it supports a common-sense conclusion that the religious objective permeated the government's action. Here I submit, if you look at the face of Section 8121, there is no religious reference whatsoever in Section 8121. It merely orders an exchange of real property. And it reflects Congress's intention, as the whole history of Congress's enactments here does, of a legitimate purpose to preserve a war memorial, which I'd also note this court in the Paulson case recognized that the goal of preserving a memorial serves what the court called an undeniably secular purpose. So I think the district court's order here on purpose or analysis on the purpose prong, the first prong of the Lemon Test, is actually inconsistent with the Paulson analysis. Go ahead. Didn't you start off your argument by conceding that the purpose of the government was to allow the cross to remain, not just to maintain a war memorial, but to allow the cross to be maintained? Oh, if I... Congress's purpose here was to preserve a war memorial. The memorial at this point is a cross. But I think importantly, Section 8121 does not... it doesn't mention the cross at all, and it doesn't require that a cross remains standing. It requires... the plain language requires that the real property be maintained as a war memorial. It doesn't have to be a cross. If it doesn't have to be a cross, why did the government enter into the transaction? To preserve a war memorial on the site. You can do that already. I mean, in other words, if they take down the cross, they can say, this outcropping is a war memorial, and they can do that already. So wouldn't... aren't you really asking us to put on blinders and say, well, we really know what you're doing, but since you used this nice language, we can pretend that we don't know? Oh, I don't... again, going back to Justice Souter's opinion for the court in McCreary, he cautioned the court against what he referred to as judicial psychoanalysis. I think the court is bound by the plain language of Section 8121, and it's... I think that even your first statement of, yeah, what they want to do is preserve the cross. I mean, if they... if they don't want to preserve the cross, what's the point of having a land transfer out of the ordinary course? Yeah. To the extent that I agreed that Congress's purpose was to preserve a cross, I misspoke. Congress's purpose is to preserve a war memorial, and at the same time... That happens to be a cross. That happens at this point to be a cross. It has been a cross for more than 70 years. It's hard to think of it in any other terms, I guess. What does it do with... I mean, I think your own client said that it's not... doesn't have any historical value, this cross. What do we do with that? Well, it doesn't have enough historical value to be listed on the historical register, which is... has its own statutory requirements. It certainly has, you know, obvious value to the VFW. And I think the point of the Seventh Circuit's and the Tenth Circuit's line of cases holding that a sale of property is an effective means of ending an Establishment Clause violation, recognize in part that the government doesn't have to... There's a lot of ways to cure an Establishment Clause violation. Congress can effectively rid the government of this liability without dishonoring the VFW. Okay, so let's say it did that. It said, I sell this to you. You want to make it a war memorial? Fine. That's what you've had. You can buy it. It's yours. But they didn't do that here. They said, number one, they have some maintenance responsibility, don't they? No. Don't they have some supervisory or oversight responsibility before reversion? Before the reversion, there is a reference back to an earlier congressional enactment that required the Park Service to erect a replica of the original plaque. First of all, that provision is easily severable from the rest of the act. So if that's the only problem that we can sever it. But more importantly, that can easily be accomplished before the land exchange. It doesn't give the Park Service any sort of continuing supervisory responsibility. Again, the plain language of Section 8121 orders the Secretary of the Interior to transfer all of the government's rights, title and interest in the property. There is no easement in this case. It's a reversionary interest if it's not used as a war memorial. As a war memorial. A war memorial. It does not require that the cross remain standing. The district court's error here was in not reading the statute to avoid constitutional infirmity as it could have, and in not presuming as it should have that some future Secretary of the Interior, if the VFW changes the form of this memorial, would in his discretion take the property back. We should presume that the Secretary of the Interior will act consistent with the Constitution. The district court did exactly the opposite. Let's assume that the transfer document said we are going to transfer this to the VFW because they wish to maintain the cross, which we can't do. See, I don't think that that would be a problem either. And in fact, if you turn to the Seventh Circuit cases, the Freedom from Religion and McCreary, and even the Tenth Circuit's case in Utah Gospel Mission, which applied this same sale, ending, and establishment clause violation idea in the free speech context, it was clear in those cases that the donor who was getting the property back wanted to keep up a statue of Jesus and wanted to keep up the Ten Commandments monument, and that was the whole reason of giving it back to them, was to allow them to keep the monument in place. And what the Seventh Circuit and the Tenth Circuit held was that when you transfer the title, you transfer with the title the religious aspect of the message. And I don't think there's any reason that rule shouldn't apply here. The district court pointed to a few things. It pointed to the reversionary clause, which we've touched on. There were similar reversionary clauses at issue in both the Seventh Circuit and the Tenth Circuit cases, and they did not undermine the application of that rule in those cases. These sorts of reversionary clauses are actually quite typical. When the Park Service disposes of surplus property, there's a statute that requires it to include a reversionary clause. And as we said, the removal of the cross is not a grounds for reversion of the property. It just has to be maintained as a war memorial. The district court also pointed to the fact that the property will be conveyed to the VFW, which is a veterans organization, that in effect donated this memorial to the United States back in 1934. Following the Seventh Circuit, that was both a permissible and a sensible approach in this case. This idea of giving the gift back to the giver does not violate the Establishment Clause. The Establishment Clause does not require the government to seek out a religiously ambivalent purchaser. We can simply give it back without violating the Establishment Clause. And then the ---- Kagan, to whom did this land belong before the purported transfer, yet never belong to these particular people that are getting it? No. I don't know what the original, you know, going way back, if it was withdrawn or if it was always government property. I don't know where your argument is taking you on that point. That it was their property to begin with. No. They, in effect, you know, I think it's parallel to the Seventh Circuit cases in that the government didn't say, oh, please, we welcome your donation of a cross. They simply put it up on federal land, at the time managed by the Bureau of Land Management. Let's say that you're correct that the transfer itself wouldn't be a violation, but then the transfer takes place and then the cross sits up there high on top of this rock. Would you agree at that point that there still might be a violation, even under the construct of the Seventh Circuit cases? There definitely could be. And, in fact, the first Seventh Circuit case struck down the sale because there wasn't an effective means of identifying that corner of the city park as privately owned. So the key in the Second Seventh Circuit case, the Mercier case, was that the city there erected a fence around the monument, the Ten Commandments monument, and identified it clearly as private property. And, again, here the district court dismissed the possibility of signs effectively conveying, this belongs to the VFW, this is private property, in a footnote rather than, as he should have, waiting to see what kind of a sign or other physical barrier the Park Service might erect to make it clear that this monument is privately owned. And it's significantly Justice Breyer and the Van Orden opinion, which the district court didn't wait for the Ten Commandments decisions to come down from the Supreme Court. Justice Breyer's controlling concurrence in Van Orden might have been of significant help to the district court. And one of the things he said there was the Ten Commandments monument in Van Orden said on it, donated by the VFW. And Justice Breyer said that that identification of the VFW, sorry, not the VFW, it was the Fraternal Order of Eagles, that identification of the Fraternal Order of Eagles as the donor distanced the government from the religious aspect of the message. Here, too, even if all the Park Service puts up is a replica of the original plaque, it says that it's erected by the VFW. That alone would already begin to distance the government from the religious aspect of the message conveyed by this cross. Well, there's something that bothers me is, is the war memorial at this point under the legislation, is it the cross? The enactment back in, I think it was 2002, that designated this memorial a national memorial, referred to it as a cross. At the time, the only other way Congress had to refer to the property was by latitude and longitude. There was no... But the cross is, so are you, do you agree that the cross is the war memorial? Currently. Currently, okay. Yes. Absent some further legislation. You know, I don't think, again, I think the... Let me just ask another question, maybe this will help clarify it. The cross seems to be the war memorial. Yes. But then, and then there's legislation that says you can't use any federal money to take down the cross. Correct. And then there's a further, so let's say we give this piece of property on which the cross sits to the VFW, but there's a further statute that says something to the effect of, but you can't take down any war memorial, because that would be illegal. So isn't the effect of that saying that you've got to preserve it as is? Well, there's nothing that would prohibit the VFW from taking it down. There's a statute that is in the appendix to the blue brief that disallows the use of federal funds to take it down, but there's nothing that would prohibit the VFW from taking it down. But isn't there something, isn't there another statute that says you can't deface or take down or do something to a war memorial? 18 U.S.C. 1369, I think is what you're referring to. Right. First of all, it wouldn't preclude the VFW from taking the cross down and replacing it with a different kind of memorial. It doesn't prohibit the VFW from replacing a war memorial. And second of all, it requires interstate commerce. The VFW is in California. The cross is in California. It would be hard to prosecute anybody for that. And it's also just entirely speculative to question whether the U.S. attorney might bring charges against the VFW for replacing the cross at some hypothetical point in the future, which gets us back to where we started with the ripeness inquiry, that the district court here should have waited for a concrete set of facts before invalidating an act of Congress. And I see that I'm getting into my rebuttal time, which I'd love to save if I can, but if the court has further questions, I'd be delighted to answer them. Well, I guess another, the other issue that comes up is this comes up to us on an abuse of discretion. So doesn't it, is it a question of whether the injunction is violated? Isn't that the posture of the case? I mean, I believe, first we have to kind of figure that out, it seems to me. Is that the posture of the case? The district court held that this act would violate its prior injunction. And, yes, injunctive relief is reviewed for abuse of discretion. But, of course, under the abuse of discretion standard, questions of law are reviewed de novo. And, of course, this entire case is, all the issues on appeal are legal questions. So it's really a de novo standard of review on these legal questions, especially because we don't really have any facts to be reviewing at this point. We have a congressional enactment on its face. And all we really have, essentially it's a facial challenge to the statute, because all we have is the face of the act. We don't know how the land exchange could be implemented at this point. We don't, we know how land exchanges are generally implemented, but we don't know what kind of a sign might be erected. We don't know even if the VFW will keep the cross or replace it with some other sort of a monument. Well, let's say, so your view is that the land exchange should go forward and then there would be another lawsuit inevitably over whether what's left there, this big cross, which can be seen from a huge distance in this National Preserve, that that would be a separate lawsuit. It's actually just to, not to nitpick, but it's actually a very small cross. It's actually not too much bigger than I am. And it can be seen from some distance. But if you put yourself on top of a promontory, you get bigger, right? Yes, I do. I would love to be bigger. I should stand up. I should get a little box to stand on right here. Yes, the Court should have waited to see what the facts are on the ground before invalidating an act of Congress. I think that the Court has said time and again that we don't judge acts of Congress under the Constitution prematurely. And I think that's what the district court did here and effectively held that no matter how you do it, it's necessarily going to violate the Establishment Clause. I think the Court should have waited for the facts before doing that. And to the extent that it held this will necessarily violate the Establishment Clause, that's just wrong. A sale of property is an effective means of ending an Establishment Clause violation, and there's no reason that rule shouldn't apply here. Thank you. Don't get too anxious during Mr. Buono's argument because we'll give you some rebuttal. Thank you very much, Your Honor. May it please the Court. I'm Peter Eliasberg from the ACLU of Southern California on behalf of Mr. Buono. I'd like to start, if I may, Your Honors, by accepting the government's invitation to look at the Seventh Circuit cases and analyze the merits of this case under that framework. And then if I may, I would like Judge Flesher to address some of your questions both about purpose and rightness and obviously any other questions the Court may have. The Seventh Circuit's basic syllogism is that generally we assume that the religious expression on private property will be attributed to the private property owner. And therefore, generally, if there has been an Establishment Clause violation because there's been a religious, intrinsically religious statue, and in this case you couldn't have a more sectarian symbol than a symbol that symbolizes that Jesus is the Son of God and died for our sins. But the basic syllogism is generally the transfer of that private property to a private owner will fix the Establishment Clause violation. But what Ms. Kovacs left out was the Court said absent unusual circumstances and delineated three illustrative but not exhaustive circumstances. Well, what is the most prominent illustrative circumstance here? Well, let me put it differently. The Seventh Circuit said one of those was when the government in effect maintains a connection. They say, well, we're selling it to this private owner, but they nonetheless maintain a connection. And the example they give is the government continues to pay for the electricity bills on the land, or the government continues to maintain. Well, in this case, what greater continuing association could there be with this land and the religious symbol on it than the government's having designated this cross a national memorial? It has raised this cross into the Pantheon of the same kind of honor it has given to the Mount Rushmore statue, to the 9-11 Flight 93 Memorial in the cornfield in Pennsylvania, and to the Vietnam Memorial on the Capitol. It has made it one of only approximately 45 national memorials in the whole country. So for the government to say we're disassociating ourselves from this speech by giving it to a private party, while at the same time we call it a national memorial, there could be no greater way that the government can maintain its connection. I would venture to say that the reasonable observer, under the Seventh Circuit's formulation, they say the reasonable observer would still think that there was an endorsement of the government's paying for the electricity on the land. But if the government's designated this a national memorial, I would say the reasonable observer would certainly know that the government is continuing to endorse this symbol. What if the cross had a neon sign on it that said erected on the private property of VFW by the VFW? Well, I think that is a harder question, Your Honor. But again, I think that it still gets it. You have the government engaged in a Rube Goldberg Act. You have a sign and a disclaimer, and yet in the Federal statutes it says this is a national memorial. I think it would be impossible for the government to say that a disclaimer in this circumstance can satisfy its separation, its requirements to separate itself when an act of Congress is designated as a national memorial. But why is the fact that you call it a national memorial any different than calling something designated for the National Historic Trust site, and the government doesn't do any, pay anything or do anything? It isn't designated because of its historical or other interests. Well, in that case, the government would be doing it because it has historic value. But as Your Honor has already pointed out, the analysis here that the government itself did conclude that it didn't have historical value. Well, it didn't have historical value, but it has some history as a war memorial, correct? For how long? Well, it has been there, the first cross was erected in 1934. It has come down numerous times. The cross that is there now is not the original cross, and the cross that is there now has not had for years and years any plaque there that said that it's a national memorial. And the government only designated it a national memorial well after this case started. So it's not as if the government had previously given its imprimatur to this symbol when there was no overhanging litigation. But even in the situation of the designation as a national historic monument, I think what the government would be identifying itself as saying, we recognize that this has particular historic value. But I think when you dedicate something as a national memorial, you're saying it has value generally, and we think it's important, we think it's so important that Congress has recognized it as such. I don't think the government can ever divorce itself from this symbol as long as this is maintained as a national memorial. And I would argue that that's one of the unusual circumstances that fits squarely within the Seventh Circuit's opinion. So you mean even if they put a fence around it and a roof on it and a sign, the fact that it's a national war memorial sinks it. There's no way that you can keep that cross on that property under any circumstance. Is that your position? Yeah, the government could simply de-designate it as a national memorial. No, but that's not my question. As long as it's called a war memorial, your view is nothing could fix it. I think that's correct. Although we do have another. That's a pretty argument out on the precipice, if you will. Do you have any other arguments as to why it's an unusual circumstance at this juncture? Well, Your Honor, if I just may, while I don't think that's out on the precipice, if continuing to pay the electricity bill somehow continues to show endorsement, I think treating this cross as akin to Mount Rushmore is a continued endorsement. Nonetheless, there is a second reason why there's an unusual circumstance here is that unlike in the Marshfield and Mercier cases, the government has engaged in blatant favoritism by at one level letting private owners come onto this property and erect a cross, while at the same time when somebody else came and said, I'd like to erect a memorial of another religion, the government said, absolutely not, and in fact, if you do, we'll arrest you. That favoritism of one particular religious expression over another is a per se establishment clause violation under Judge Fletcher's opinion for the en banc court in the AJC case and under all of the opinions in the Capitol Square v. Panette case. Didn't the Park Service say at the same time they turned down the Buddhist, I think it was, memorial, that they were going to take the cross down? They did. And then the federal government said you can't, Congress said you can't spend any money to take it down. So the mere fact that the National Park Service may have expressed an intention to take it down, Congress short-circuited that pretty darn quick by passing a congressional statute that said you can't do it. So I don't think it would be one thing if the interior had said we want to do that and then had taken it down. But that's not the circumstances here. One of my concerns is that right now, as it presently stands, the monument is in compliance with the injunction, correct? That's correct to the extent the injunction is phrased as not displayed on government property. That's correct. Okay. So that gets us back to this ripeness question. If we just sat on this for five years and nothing changed, there would be no violation of the injunction, correct? That's not correct, Your Honor. Okay. I certainly don't believe it's correct. Why not? Because as in the Santa Fe case, it is the act of the government doing what it's doing in context of the whole history of this case, the blatant favoritism for a Christian religious symbol over other religious symbols, the government's history of numerous times trying to do everything it could to preserve the cross. Now, Judge Fletcher had the question, I believe all of you, Your Honors, did, suggesting that there would not be a secular purpose to preserving a cross, but that's what the government did twice when it passed legislation saying you can't take this cross down. They weren't saying that you have to preserve this as a war memorial. They, in effect, said you have to keep this cross here. It's boxed up right now, isn't it? Well, that brings – that goes to the ripeness question, Judge White. And again, as in Santa Fe, the question of whether there will ultimately be a student prayer, which was the issue that the government raised as saying this case wasn't right, what the Court said was the challenge here is to the history and the present policy that the school district has put in place, and that even though there may be some eventuality that in the future the cross will come down or that the box will come off, isn't the issue when we can see that the purpose and effect of the statute itself, in conjunction with the history in this case, is a violation of the Establishment Clause. The other issue is I think with respect to ripeness, Your Honors, I've been thinking a lot about this from a Federal courts perspective. Ripeness – I have never seen a ripeness case that's not analyzed as a question of should this case get into court. And I believe the proper inquiry here, if at all, with respect to this, is not ripeness but mootness. Ripeness and standing deal with is there a case or controversy. There's clearly a case or controversy here. That's the law of the case from this Court when you found that Mr. Bruno had standing and that there was a case or controversy. Now we're six years into it and there's a final judgment in this case, and the question is was the district court correct or did it abuse its discretion in saying that the transfer would not comport with the injunction. I've never seen a case that says that that ripeness applies in those circumstances. I think the proper analysis, if at all, is mootness. And under those circumstances, the burden on the government is really on the government to say you shouldn't deal with this because it's absolutely and completely eradicated. And that's the standard set forth by this Court in the Norman Bloodsaw case. But there's no question that the government concedes that there might very well be an issue in the future if the cross remains up and the VFW keeps it up. But the other reason that this doesn't ---- But what the government is saying there is that there's really two parts to the argument. Your argument is that you're sunk once you're designated as a war memorial. If your argument were incorrect and the question would be what would this thing look like in the end and, you know, what are there things that could be done to divorce it from government control and oversight, the government's point is we don't know how far somebody will go and whether those things will comply. So how can you decide it in the abstract? Well, if I could go back first to the premise of Your Honor's question, I just want to repeat. Our position is not you're sunk and you could never do anything about this cross as it's designated a national memorial. Congress took the step to designate it. Congress can take the step to undesignate it. If it does, it changes the analysis of the case very dramatically. So it's not a question of sunk permanently and forever. It's a question of whether the Congress wants to choose to say we remain associated with this, we treat this the same way we treat the Vietnam Veterans Memorial, or if they choose not to. So it's not permanently sunk. But Your Honor is correct that our position is, and this will lead me into the questions that Judge Fletcher was asking about purpose, that because the purpose of this and the effect people are going to perceive that this is a perpetuation of the favoritism that the government already gave to this particular religious symbol over other religious symbols, that this combination of things makes this impermissible, regardless of whether there are some future facts. As in the case of Santa Fe, when the Court says, yes, we concede, under these circumstances there may never be a student who gives a prayer. Nonetheless, the fact is that what the government is trying to do and what people will perceive it as trying to do is not distancing itself sufficiently from student prayers. Okay. Well, let me ask you if this has been some form of a war memorial over the years, correct? Well, it certainly has not been a form of designated national memorial until after this case started. Right. But I don't mean a national, but I mean in nature. That's what its nature was initially, correct? It was put up by the VFW, and the plaque said that it was to honor soldiers of World War I. Now, as Judge O'Scanlan recognized in the SCSC case, though, it's very troubling to put up the intrinsically sectarian religious symbol of one religion, the meaning of which is Christ died for your sins. Let's just stick to my question. It was originally some form of a war memorial, albeit with a Christian cross. So my question to you is, what could Congress do if it wanted to give a private party the option to maintain that or change it? What could Congress do that, in your view, would be constitutional? Well, without trying to repeat myself, but I want to be clear what my position is. I think one is Congress would need to de-designate, and that, I think, is the most important fact here. That would be sufficient. It would go a very long way to fixing the problem, and I believe this Court can decide this case on that issue alone completely squarely with the Marshfield and Mercier cases. However, we did argue in our brief that in this case, unlike in Marshfield and Mercier, when the government's violation is not simply aligning itself with a particular religious object, as it did in this case, the government's violation is much further, and it's what happened in the AJC case. The government said to one religious group, uh-uh, we don't want your symbol here. But they repeatedly said, we're fine and happy, and in fact, we'll memorialize the fact that the Christian cross is here. Under the basic principles of equity, the remedy has to solve the particular constitutional problem. In Marshfield, there was no evidence that the government had ever said to a Jewish group, we don't want your memorial here. We only want the Ten Commandments. So in these circumstances, the government, I believe, does have an obligation to open the sale up, at least to groups like the VFW, who are equally committed to having war memorials. And this goes back, I think, to Judge Fletcher's point about the gift. Let me just follow up, because I'm not sure I'm totally understanding your argument. Let's assume that the trial court was affirmed in this case, and then the government passed legislation that removed the war memorial designation, sold it to the VFW, and maintained no reversionary interest or no control over what they did with it, but the government would have been able to either erect a cross or maintain a cross on the property. Any problem? It goes without saying it's a far different case. I think it probably is constitutional, because the government would in large part have maybe completely disassociated itself from its explicit favoritism. But I guess what I would say, Judge White, and it's a hard question, and, again, it's not the one presented, I think in those circumstances it might very well be that the government would be correct, that that issue, you would need to wait, and you would need to wait to see what does the fence look like, what does the sign that goes up look like, and then you would analyze it under that particular set of facts and circumstances. Judge Fletcher, you asked earlier about the government raised this idea about the gift, and they've made a big deal about you give it back to the giver. But that's not what's happening here. First of all, it's a little hard to say that someone coming onto private property and leaving a statue there is necessarily a gift. I mean, there was certainly no acknowledgment of that. But second of all, the gift was the cross. It wasn't an acre of property in National Parkland. So that analogy fails, because when someone comes and gives you $250 in your office, you don't give back the $250 and sell them in your office. And that's basically what the government is doing here. So they can't rest under the idea that this is simply returning the gift, and therefore it's neutral. The way I understood the government's argument is that if the government is going to alienate this land for purposes of a war memorial and then it's not used for that, then the government ought to get the land back. So what's wrong with that? I don't have any – well, I think one needs to look at this case under the total set of facts and circumstances. If what had happened was there was a cross put up, no one else had ever come to the government and said we'd like to put something else up, litigation was filed, the government said this could be a problem, we're just going to end this whole issue, and we're going to sell it to the VFW. That's an entirely different set of facts and circumstances from this case, where the government has so many different ways made it very clear that its ultimate goal is to ensure that the cross remains up. How do we know that? Because they've twice said you can't spend Federal funds to take it down, and they've arranged a transfer. It's not just the government and the VFW. The linchpin of this transfer is the Sandozes. The Sandozes have said we'd rather go to jail than see this cross come down. So you're – Judge McEwen, you're correct. It would be putting blinders on to accept what the government's saying, which is, well, of course the VFW could take this down. We don't know what they're going to do. First of all, a veterans organization is not going to tear down a national memorial. It is a laughable concept. Second of all, the Sandozes never would have put this transfer together with the Federal government if they didn't know that the VFW was going to keep the cross up. And, of course, the VFW is going to keep the cross up. They put it there in the first place. And that goes, I think, to the – So the district court can determine all of that as a matter of law? Well, there are facts that are in the record that the court has to rely on, just as there is a fact that there is a cross there and so on. There are certain facts here. But I believe all of those facts are squarely presented in the record, and no weighting is going to change those facts. They're not going to change this transfer. They're not going to change that. Why does it matter what the Sandozes' intent is if, in the end, they don't have any legal right to the property? Well, it matters for the same reason that the policy that was struck down in the Santa Fe case did not absolutely ensure that a prayer would be given. But the court said it's obvious that the government is doing everything it can to set this up so a prayer will be given. The fact that the Sandozes are the linchpin of this transfer, when they say they've maintained the cross and they say they'd rather go to jail than see it come down, affects the analysis of the government's purpose here and also the perception that someone would have about it. Is this a good faith effort for the government really to say we're disassociating ourselves from this? Or is this the government basically saying we desperately want to keep a cross up and we want to keep it up exactly where it's been and in exactly in the same area where we told someone else they couldn't put up another memorial, but we will through a statute write it in such a way that says just preserve it as a war memorial instead of a cross because we're not that dumb? Very quickly, if I could go to purpose, Judge Fletcher. Purpose is gleaned from the history of the case and the nature of the religious act. In this case, it could not be a more explicitly sectarian religious symbol, and there is a long history of the government doing everything it could to keep this cross on government property. If you look at McCreary County, the court does not say in that case you just need to look at the face of the statute or the legislative history. But to the extent that that's correct, the legislative history in effect of this case is repeated efforts by the government to associate itself with this cross and to refuse to allow it to come down. And therefore, the only clear way we can view the purpose here is that it's attempting simply to make sure that the cross remains standing exactly where it stood for years. I guess the other thing that troubles me is that a lot of the briefing is sort of to this nefarious purpose. But the other way to look at it is that the government's handed this challenge, which is you can't display this cross in a national park area. So the government is then taking steps to say, okay, if I can't do that, why can't I take steps that won't violate that injunction? Well, if that had been the way the government had proceeded in the first place from the time a judgment came down and said, okay, let's sell it, that's not what the government did. It designated a national memorial and said you can't spend any money to take it down. Those are facts that enable you to glean what the government's really doing in this case. It might have been a very different case if the government had not initially gone to the VFW. But, Your Honor, with respect to the now legislation, in other words, if the challenge is as to there's not a challenge to the statute that says you can't spend money to take it down, correct? That's correct, Your Honor. Okay. So let's just stop there. So you can file a lawsuit now that says that's unconstitutional in terms of that does frustrate compliance with the injunction. But I'm having trouble understanding why the existence of that statute, which hasn't been challenged and is now used to undermine the government's intent of trying to get rid of this thing. Well, I would say, Your Honor, is for exactly the same reason as the Court looked at old policies and old government actions or older policies and old government actions in both McCreary County and the Santa Fe case to glean what the government's current purpose was. The last thing I'd say is, yes, we do brief purpose in the case, but we also brief effect at great length, Your Honor. So we are not simply making an argument that the government has an invalid secular purpose here. We very clearly are briefing the endorsement prong, the effect of endorsing prong, which is really the second part of Lemon. The government doesn't have any further questions. I'm sure the government might have. I'm sure they do. Thank you very much. Ms. Kovacs and I can discuss those after. All right. We gave some extra time as well to Mr. Bonus Counsel, so you may have a minute and a half for rebuttal. Thank you, Your Honor. I'll be very brief. First of all, the suggestion that the burden is on the government here, I think, is clearly incorrect. The burden is always on a party challenging a Federal enactment as unconstitutional. Second, your ---- Well, that's what's up now is, are you violating the injunction? Correct. And the injunction, this gets to one of Judge McKeown's points, I think, that the district court enjoined the display of a cross, period. The cross is covered. It is not being displayed. The injunction has not been violated, and it will not be violated until this, until the land exchange is completed and it's no longer Federal property. So the district court did go beyond the scope of its injunction. The Santa Fe case, I think, we adequately discussed in the reply brief. Getting to the Seventh Circuit's and the Tenth Circuit's concept of a sale ending an endorsement of religion, Mr. Eliasberg suggested that the government should effectively make Sunrise Rock an open forum and open it to other religious symbols. That would certainly be a permissible means of curing the constitutional violation here. But neither the Seventh Circuit nor the Tenth Circuit held that that was required. There is another way to do it. The sole problem Mr. Eliasberg identified with the land exchange here is the fact that this has been designated a national memorial. I would point out that when Justice Kennedy stayed the district court's order to remove the Mount Soledad Cross, one of the primary reasons he said that that cross needed to remain standing was because it had been designated a national memorial. It was one of the keys to his opinion there was because of the respect that's due Congress. And, again, a sign here, per Justice Breyer's Van Orden opinion, a sign here can distance the government from the religious aspect of the message. Last point on purpose. In the prior appeal, the court did not question the government's purpose, and I think that was the right thing to do. Here, again, Mr. Eliasberg suggested that essentially a cross is so intrinsically religious that it can't serve a legitimate secular purpose. Justice Souter, writing for the court in McCreary, recognized that even the Ten Commandments can serve a secular purpose. The Ten Commandments that say explicitly, I am the Lord thy God. Thou shalt have no other God before me. If that can have a secular purpose, surely a cross can too. And that's why the Fifth Circuit in the Briggs case held that having a cross on a state flag serves a legitimate secular purpose. When you go to Arlington Cemetery and you see the sea of crosses, you don't think, wow, that's a lot of Christians. You know that the cross signifies the war dead. It memorializes the dead, and that's the purpose of this cross, and that's why this is. In cemeteries, don't they put a different symbol over Jewish casualties? They can. I think there's more than 100 different symbols that you can request. But the point is that a cross can be on a state flag and serve a secular purpose. The Ten Commandments can serve a secular purpose. Legislative prayer can serve a secular purpose. A cross is, of course, the preeminent symbol of Christianity, no doubt, but it also can serve a secular purpose. And that's why in the prior appeal of this case, the court did not question the government's purpose. At heart, the district court held that this was Congress's way of perpetuating a constitutional violation. It wasn't. It was Congress's good-faith effort to end a constitutional violation. The district court went well beyond its prior injunction, and the order here should be vacated. Unless the court has further questions, thank you very much for your time. Thank you. I thank both counsel for your very, very good briefs and for your arguments this morning. The case of Bono v. Gail Norton is submitted, and we're adjourned for the morning.
judges: B. Fletcher, McKeown, Whyte